PETER L. CARR, IV (#256104)
pcarr@thePLClawgroup.com
NA'SHAUN L. NEAL (#284280)
nneal@thePLClawgroup.com
LAUREN K. MCRAE (# 331296)
lmcrae@thePLClawgroup.com
PLC LAW GROUP, APC
3756 SANTA ROSALIA DR., SUITE 326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE:  (310) 400-5895
ATTORNEYS FOR PLAINTIFFS
**NAVODNEY LEWIS, WALTER HARDIN,
KE'MANI JACQUES AND KENNETH JACQUES**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVODNEY LEWIS, WALTER HARDIN, KE'MANI JACQUES and KENNETH JACQUES,<br><br>       Plaintiffs,<br>    vs.<br><br>CITY OF LOS ANGELES, OFFICER KIM (#44151), OFFICER CLARK (#36256), OFFICER COLLYER (#27575), OFFICER CEJA (#37374), OFFICER HECHAURRIA (#43686) and DOES 1 through 10 inclusive,<br><br>       Defendants. | Case No.:<br><br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     This case challenges the unlawful searches and seizures of Plaintiffs, Navodney Lewis, Walter Hardin, Ke'mani Jacques and Kenneth Jacques, under federal and state law. Without probable cause or reasonable suspicion that Navodney Lewis, Walter Hardin, Ke'mani Jacques or Kenneth Jacques had committed a crime or were about to commit a crime, Defendant Officers of the Los Angeles Police Department, unlawfully searched and seized Plaintiffs. Plaintiffs, Navodney Lewis, Walter Hardin, Ke'mani Jacques and Kenneth Jacques, complain of Defendants City of Los Angeles, Officer Kim (#44151), Officer Clark (#36256), Officer Collyer (#27575), Officer Ceja (#37374), Officer Hechaurria (#43686) and DOES 1 through 10, inclusive, as follows:

**VENUE AND JURISDICTION**

2.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988.  State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the City of Los Angeles, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

**CLAIMS STATUTE REQUIREMENT**

3.     On or about July 28, 2020, Plaintiffs filed a timely Governmental Claims for Damages with the City of Los Angeles.  On or about September 11, 2020, said Claim for Damages was denied by operation of law.

**PARTIES**

4.     At all relevant times herein, Plaintiff NAVODNEY LEWIS ("Navodney" or "Plaintiff") was and is a resident of the State of South Carolina in the County of Horry.

5.     At all relevant times herein, Plaintiff WALTER HARDIN ("Walter" or "Plaintiff") was and is a resident of the State of South Carolina in the County of



-2-
COMPLAINT

1    Horry.

2    6.    At all relevant times herein, Plaintiff KE'MANI JACQUES ("Ke'mani" or

3    "Plaintiff") was and is a resident of the State of South Carolina in the County of

4    Richland.

5    7.    At all relevant times herein, Plaintiff Kenneth Jacques ("Kenneth" or

6    "Plaintiff") was and is a resident of the State of South Carolina in the County of

7    Orangeburg.

8    8.    Defendant CITY OF LOS ANGELES (hereinafter referred to as "CITY") is,

9    and at all times in this complaint was, an incorporated public entity duly authorized

10   and existing as such in and under the laws of the State of California; and at all

11   times herein mentioned, Defendant CITY possessed the power and authority to

12   adopt policies and prescribe rules, regulations and practices affecting the operation

13   of the LOS ANGELES POLICE DEPARTMENT (hereinafter referred to as

14   "LAPD") and its tactics, methods, practices, customs and usages.

15   9.    Defendant OFFICER KIM (#44151) is, and at all times in this complaint

16   was, an individual employed by the LAPD and/or its subsidiaries as a police

17   officer, acting within the course and scope of her employment and also within her

18   actual and apparent authority as an officer of a public entity, CITY.

19   10.   Defendant OFFICER CLARK (#36256) is, and at all times in this complaint

20   was, an individual employed by the LAPD and/or its subsidiaries as a police

21   officer, acting within the course and scope of his employment and also within his

22   actual and apparent authority as an officer of a public entity, CITY.

23   11.   Defendant OFFICER COLLYER (#27575) is, and at all times in this

24   complaint was, an individual employed by the LAPD and/or its subsidiaries as a

25   police officer, acting within the course and scope of his employment and also

26   within his actual and apparent authority as an officer of a public entity, CITY.

27   12.   Defendant OFFICER CEJA (#37374), is, and at all times in this complaint

28   was, an individual employed by the LAPD and/or its subsidiaries as a police



officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, CITY.

13.   Defendant OFFICER HECHAURRIA (#43686) is, and at all times in this complaint was, an individual employed by the LAPD and/or its subsidiaries as a police officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, CITY.

14.   At all relevant times mentioned herein and material hereto, Defendant DOES 1 through 10, described below, engaged in law enforcement as officers, sergeants, captains, lieutenants, and/or agents of Defendant CITY, duly employed as by the LAPD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

15.   PLAINTIFFS are informed and believe and thereon allege that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFFS who, therefore, sue said Defendants by such fictitious names. PLAINTIFFS will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

16.   Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

### FACTS COMMON TO ALL COUNTS

17.   Navodney is a 28-year-old African-American male. Walter is a 71-year-old African-American male. Ke'Mani is a 21-year-old African-American male. Kenneth is a 42-year-old African-American male.

18.   Plaintiffs Navodney, Walter, Jacques and Kenneth (hereinafter collectively referred to as "Plaintiffs") traveled to Los Angeles, California to celebrate a



birthday.

19.     On or about June 3, 2020 at approximately 4:27 p.m., Plaintiffs were stopped, searched and detained on the corner of Fountain Avenue and N. Sycamore Avenue in Los Angeles, California by LAPD Officers Kim (#44151), Clark (#36256), Collyer (#27575), Ceja (#37374), Hechaurria (#43686) and DOES 1 through 10, inclusive, (hereinafter collectively referred to as "LAPD officers" or "Defendant Officers")  without reasonable suspicion or probable cause that they committed a crime or were about to commit a crime.

20.     On the date of the subject incident, Plaintiffs were in the car when suddenly several LAPD patrol vehicles swarmed their car and ordered the driver, Navodney, to pull over.

21.     LAPD officers pointed their guns at Plaintiffs while ordering them to exit the car one at a time.

22.     LAPD officers ordered 71-year-old Walter to exit the car with his arms raised and kneel in the middle of the street.

23.     LAPD officers then ordered Navodney to exit the car with his arms raised and kneel on the sidewalk.

24.     Next, LAPD officers ordered Ke'Mani and Kenneth to exit the car with their arms raised and kneel on the sidewalk.

25.     Later, LAPD officers ordered Walter to get up, while keeping his arms raised, and kneel on the sidewalk alongside Navodney, Ke'Mani and Kenneth Jacques.

26.     Plaintiffs fully complied with all of the officers' orders.

27.     LAPD officers kept their guns pointed at Plaintiffs, while fellow officers conducted pat-down searches and handcuffed each of them.

28.     On information and belief, LAPD officers stopped Plaintiffs to investigate an alleged robbery, wherein the suspects had already been identified as a White male and Latino male with low-cut hair and facial tattoos.



29.     As previously mentioned, all of the Plaintiffs are African-American and none have facial tattoos.

30.     Moreover, Plaintiff Navodney has long hair.

31.     Despite realizing that Plaintiffs were not the robbery suspects, LAPD officers continued to unlawfully detain and interrogate Plaintiffs on the side of the road for approximately an hour.

32.     As Plaintiffs were handcuffed, LAPD officers searched Plaintiffs' persons and vehicle, without consent, reasonable suspicion or probable cause to do so.

33.     Additionally, despite having knowledge of a global pandemic and in direct violation of the CITY's mandate that all individuals wear masks while in public, LAPD officers were not wearing masks while unlawfully detaining, searching and interrogating Plaintiffs. Said disregard for Plaintiffs' health and safety is unconscionable and warrants the imposition of punitive damages.

34.     The unlawful acts alleged herein were video-recorded by several known and unknown witnesses.

35.     Also, LAPD officers were wearing body cameras and their patrol vehicles were equipped with dash cameras during the subject incident.

36.     Based upon the foregoing, Plaintiffs have remedies pursuant to 42 U.S.C § 1983, 42 U.S.C. §§ 12131 et seq., 29 U.S.C. §§ 794 et seq., Cal. *Gov't Code* § 11135, Cal. *Civ. Code* §§ 51, 51.7, 52, 52.1 and 54, and sundry state-law statutory and common law theories for unlawful search and seizure, unlawful custom or practice, conspiracy, battery, assault and other damages, including remedies for intentional infliction of emotional distress and violation of California's Bane Act.



**FIRST CAUSE OF ACTION**

**Unlawful Search and Seizure – 42 U.S.C. § 1983**

**(Plaintiffs against OFFICER KIM (#44151), OFFICER CLARK (#36256), OFFICER COLLYER (#27575), OFFICER CEJA (#37374), OFFICER HECHAURRIA (#43686) and DOES 1 through 10, inclusive)**

37.   Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

38.   This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiffs seek to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

39.   As a result of the above described intentional acts and omissions of the Defendants, collectively and individually, Plaintiffs' Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

    a.    LAPD officers pointed their guns at Plaintiffs while ordering Walter and Navodney to exit the car with their arms raised and kneel in the middle of the street, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

    b.    LAPD officers pointed their guns at Plaintiffs while ordering Ke'Mani and Kenneth to exit the car with their arms raised and kneel on the sidewalk, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

    c.    LAPD officers pointed their guns at Plaintiffs while ordering Walter and Navodney to get up, while keeping their arms raised, and kneel on the sidewalk alongside Ke'Mani and Kenneth Jacques, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

d.      LAPD officers pointed their guns at Plaintiffs, while fellow officers conducted a pat down search of each Plaintiff, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

e.      LAPD officers pointed their guns at Plaintiffs while fellow officers handcuffed each Plaintiff, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

f.      LAPD officers placed each Plaintiff in the backseat of a LAPD patrol car, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime; and

g.      LAPD officers searched inside Navodney's vehicle, without probable cause, reasonable suspicion or consent to do so.

40.      As a result of the conduct of Defendant Officers, they are liable for Plaintiffs' injuries, either because they were integral participants in the unlawful searches and seizures described herein, or because they failed to intervene to prevent these violations.

41.      The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

42.      At no point did any of the Plaintiffs pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Plaintiffs made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officers that Plaintiffs had the will or ability to inflict substantial bodily harm against any individual.

43.      Additionally, Defendant Officers acted entirely without probable cause or reasonable suspicion that Plaintiffs had committed, were committing, or would commit any crime.

44.    Accordingly, Defendant Officers are each liable to Plaintiffs for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiffs also seek litigation costs under this claim.

**SECOND CAUSE OF ACTION**

**EXCESSIVE FORCE – 42 U.S.C. § 1983**

**(Plaintiffs against OFFICER KIM (#44151), OFFICER CLARK (#36256), OFFICER COLLYER (#27575), OFFICER CEJA (#37374), OFFICER HECHAURRIA (#43686) and DOES 1 through 10, inclusive)**

45.    Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

46.    This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiffs seek to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

47.    As a result of the above described intentional acts and omissions of the Defendants, collectively and individually, Plaintiffs' Fourth Amendment constitutional right to be free from excessive force, as applied to state actors by the Fourteenth Amendment, was violated when:

    a.    LAPD officers pointed their guns at Plaintiffs while ordering Walter and Navodney to exit the car with their arms raised and kneel in the middle of the street, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

    b.    LAPD officers pointed their guns at Plaintiffs while ordering Ke'Mani and Kenneth to exit the car with their arms raised and kneel on the sidewalk, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

    c.    LAPD officers pointed their guns at Plaintiffs while ordering Walter and Navodney to get up, while keeping their arms raised, and kneel on the



sidewalk alongside Ke'Mani and Kenneth Jacques, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

d. LAPD officers pointed their guns at Plaintiffs, while fellow officers conducted a pat down search of each Plaintiff, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

e. LAPD officers pointed their guns at Plaintiffs while fellow officers handcuffed each Plaintiff, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

f. LAPD officers placed each Plaintiff in the backseat of a LAPD patrol car, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime; and

g. LAPD officers searched inside Navodney's vehicle, without probable cause, reasonable suspicion or consent to do so.

48.   At no point did Plaintiffs pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Plaintiffs made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that Plaintiffs had the will or ability to inflict substantial bodily harm against any individual.

49.   As a result of the conduct of Defendant Officers, they are liable for Plaintiffs' injuries, either because they were integral participants in the unlawful searches and seizures described herein, or because they failed to intervene to prevent these violations.

50.   The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.



51.     At no point did any of the Plaintiffs pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Plaintiffs made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officers that Plaintiffs had the will or ability to inflict substantial bodily harm against any individual.

52.     Additionally, Defendant Officers acted entirely without probable cause or reasonable suspicion that Plaintiffs had committed, were committing, or would commit any crime.

53.     Accordingly, Defendant Officers are each liable to Plaintiffs for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiffs also seek litigation costs under this claim.

**THIRD CAUSE OF ACTION**

**EQUAL PROTECTION VIOLATION – 42 U.S.C. § 1983**

**(Plaintiffs against OFFICER KIM (#44151), OFFICER CLARK (#36256), OFFICER COLLYER (#27575), OFFICER CEJA (#37374), OFFICER HECHAURRIA (#43686) and DOES 1 through 10, inclusive)**

54. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

55. This cause of action arises under the Equal Protection Clause of the 14th Amendment, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the U.S. Constitution.

56. As a result of the above-described intentional acts and omissions of the defendants, collectively and individually, Plaintiff's Fourteenth Amendment constitutional right to be free from racial discrimination, was violated when Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

57. This cause of action arises under Title 42 United States Code § 1983, wherein

Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

58. As a result of the above-described intentional acts and omissions of the Defendant Deputies, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from excessive force, as applied to state actors by the Fourteenth Amendment, was violated when Defendant Officers and Does 1 through 10 inclusively, violated Plaintiff's right to due process of law and liberty interest on the account of his race.

59. The conduct of Defendant Officers and Does 1 through 10 was motivated by the race:

a. LAPD officers pointed their guns at Plaintiffs while ordering Walter and Navodney to exit the car with their arms raised and kneel in the middle of the street, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

b. LAPD officers pointed their guns at Plaintiffs while ordering Ke'Mani and Kenneth to exit the car with their arms raised and kneel on the sidewalk, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

c. LAPD officers pointed their guns at Plaintiffs while ordering Walter and Navodney to get up, while keeping their arms raised, and kneel on the sidewalk alongside Ke'Mani and Kenneth Jacques, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

d. LAPD officers pointed their guns at Plaintiffs, while fellow officers conducted a pat down search of each Plaintiff, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

e. LAPD officers pointed their guns at Plaintiffs while fellow officers



handcuffed each Plaintiff, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime;

f. LAPD officers placed each Plaintiff in the backseat of a LAPD patrol car, without probable cause or reasonable suspicion to believe that any of Plaintiffs had committed or were about to commit any crime; and

g. LAPD officers searched inside Navodney's vehicle, without probable cause, reasonable suspicion or consent to do so.

60. Defendants' treatment of Plaintiffs is part of the pattern and practice of Los Angeles Police Department deputies using the law to mistreat African Americans.

61. As a result of the conduct of Defendants, they are liable for Plaintiff's injuries, either because they were integral participants in the violation of Plaintiff's Equal Protection rights or because they failed to intervene to prevent these violations.

62. The conduct of the Defendant Officers and DOES 1 through 10, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to each individual Defendant.

63. Accordingly, Defendants are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

### FOURTH CAUSE OF ACTION

### Deprivation of Constitutional Rights—Conspiracy – 42 U.S.C. §1985(3)
### (Plaintiffs against OFFICER KIM (#44151), OFFICER CLARK (#36256), OFFICER COLLYER (#27575), OFFICER CEJA (#37374), OFFICER HECHAURRIA (#43686) and DOES 1 through 10, inclusive)

64. Plaintiffs repeat and re-alleges each and every preceding allegation of this Complaint with the same force and effect as if fully set forth herein.

65. Defendant Officers, as agents of the LAPD, an institution with a documented



history, pattern, and practice of harassing by non-white drivers, unlawful uses of force and arrest, have demonstrated a propensity for animus against African American citizens.

66. Defendant Officers invidiously discriminated against Plaintiffs and purposefully conspired together to deny Plaintiffs equal protection of the laws as heretofore alleged by:

    a. Depriving Plaintiffs of their Fourth Amendment right to be free from unreasonable searches and seizures by collectively participating in the wrongful search, detention, and arrest or failing to intervene in these constitutional violations as recited above, because Plaintiffs are African-American;

    b. Depriving Plaintiffs of their right to be free from unreasonable searches and seizures by collectively using unreasonable force in violation of the Fourth Amendment and Fourteenth Amendments as recited above, because Plaintiffs are African- American; and

    c. Depriving Plaintiffs of their right to be free from racial animus during police contact by violating Plaintiffs' rights as described in this complaint because Plaintiffs are African-American.

67. By virtue of the foregoing, Defendants conspired for the purpose of depriving Plaintiffs of equal protection and immunities under the law, preventing and hindering the constituted authorities from giving and securing to Plaintiffs equal protection of the law and infringing Plaintiffs liberty interests and property interests without due process of the law.

68. Defendants did and caused to be done, an act or acts in furtherance of the object of the conspiracy, whereby Plaintiffs were deprived the rights and privileges, as set forth above.

69. As a direct proximate result of the foregoing, Plaintiffs have been injured, as set forth above.

**FOURTH CAUSE OF ACTION**

**Municipal Liability for Unlawful Custom and Practice – 42 U.S.C. § 1983**
**(Plaintiffs against Defendant CITY)**

70. Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

71. Defendant CITY, is and at all times herein mentioned, has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California and at all times herein mentioned, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LAPD and its tactics, methods practices, customs and usages.

72. At all times herein mentioned, Defendants and each of them, were employees acting under the CITY and LAPD's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, discriminatory practices, and numerous other serious abuses of their powers as peace officers during their employment by the CITY.

73. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant CITY and LAPD include, but are not limited to:

    a.    Defendants CITY and LAPD had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful searches and seizures, dishonesty and improper tactics, and corruption by LAPD employees, including the individual Defendants herein, and refused, with

deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the Plaintiffs' liberty interests;

b.   Defendant CITY and LAPD refused to adequately discipline individual employees found to have committed similar acts of abuse and misconduct;

c.   Defendant CITY and LAPD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by CITY and LAPD employees;

d.   Defendant CITY and LAPD reprimanded, threatened, intimidated, demoted and fired employees who reported acts of abuse by other CITY and LAPD employees;

e.   Defendant CITY and LAPD covered up acts of misconduct and abuse by CITY and LAPD employees and sanctioned a code of silence by and among LAPD Officers;

f.   Defendant CITY and LAPD failed to adequately supervise the actions of employees under its control;

g.   Defendant CITY and LAPD failed to adequately train, supervise its officers and employees in contacting civilians and making stops and arrests based only on reasonable suspicion and probable cause, instead, among other things, allowing officers to profile individuals in a racially discriminatory fashion.

h.   Defendant CITY and LAPD failed to adequately train, supervise, and control LAPD officers in making detentions or arrests based on reasonable suspicion or probable cause during traffic stops and allowed LAPD officers to carry out roadside interrogations followed by unwarranted searches and investigations and detentions or arrests without reasonable suspicion or probable cause;

i.   Defendant CITY and LAPD failed to adequately train, supervise, and



control LAPD officers in uses of force, including physically restraining individuals not reasonably suspected to be armed and dangerous;

j.    Defendant CITY and LAPD tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

k.    Defendant CITY and LAPD tacitly condones and encourages use of excessive force on citizens;

l.    Defendant CITY and LAPD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by May 30, 2019, and thereafter, represented the unconstitutional policies, practices and customs of the CITY and LAPD.

74. Defendant CITY and LAPD's unlawful searches and seizures described herein are part of a practice and pattern of the CITY's unlawful mistreatment and criminalization of African-Americans.

75. The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendants CITY and LAPD:

    a.    According to media reports, in December 2014, Michelle Jordan settled an excessive force claim against the CITY for $550,000 after she was body-slammed by Los Angeles police officers when stopped for a cell phone violation.

    b.    In April 2018, Joston Theney, a 36-year-old African-American man, settled a claim for unreasonable search and seizure against the CITY for $200,000 after the LAPD initiated a "high-risk" traffic stop based on their mistaken belief that his license plate did not match his car; during the stop, officers ordered Mr. Theney out of the vehicle and searched him while detaining him in handcuffs.

    c.    In July 2015, Frank Martinez, an adult Latino man, settled a claim against the CITY for unreasonable search and seizure after he was grabbed



out of his car, slammed to the ground and beaten by LAPD officers during a traffic stop.

d.      According to media reports, in January 2019, Los Angeles Mayor Eric Garcetti says he's concerned about a newspaper report that a special police unit is pulling over a disproportionate number of African-American motorists and he ordered the department to scale back vehicle stops.

e.      In January 2019, the LAPD began investigating several LAPD officers accused of falsifying traffic stop data.

f.      In January 2020, LAPD Chief Michel Moore announced an expansion of its internal investigation into allegations of officers falsifying data collected during traffic stops. Chief Moore said a total of 20 officers have been reassigned — 10 of them assigned to home duty and 10 others taken off patrol duties.

g.      In October 2019, the results of an analysis by the Los Angeles Times revealed  LAPD officers search blacks and Latinos far more than whites during traffic stops, and that is despite the fact that officers are more likely to find illegal items on white residents. According to the study, 24% of African-American drivers and passengers were searched, compared with 16% of Latinos and 5% of whites; yet, white were actually found to have illicit items on them in 20% of searches, compared with 17% for blacks and 16% for Latinos.

h.      In August 2020, Mr. Johnny Mayfield filed a civil rights lawsuit against the CITY and LAPD officers alleging unlawful search and seizure, excessive force, unlawful custom/practice and conspiracy to interfere with civil rights. Mr. Johnny Mayfield is an African-American male, who is 6 foot and 3 inches tall and weighs approximately 270 pounds and employed as a postal carrier. On May 30, 2019, LAPD officers stopped Mr. Mayfield as he was driving, without any legal justification. Shortly after, the officers ordered Mr.



Mayfield to exit his vehicle and forcefully arrested him, without reasonable suspicion or probable cause to do so. When the officers saw Mr. Mayfield's postal carrier satchel in his car, they told Mr. Mayfield it was necessary to conduct an investigation to determine whether he stole from the post office. In response, Mr. Mayfield informed the officers that he works for the post office. The scoffed at Mr. Mayfield's explanation, ridiculing the notion that a man of his stature works as a mail carrier. The officers told Mr. Mayfield, "We think you stole," despite lacking any reasonable basis for said accusation and discovering Mr. Mayfield's certification card issued by the National Association of Letter Carriers. The officers kept Mr. Mayfield in handcuffs against the hot hood of his car for approximately an hour. Mr. Mayfield was not on probation or parole, and ultimately the officers issued him a "fix-it ticket" for not having a front license plate installed and a broken license plate light.

76. On information and belief, Defendant Officers attended training programs related to anti-discrimination prior to the incident with Plaintiffs.

77. On information and belief, Defendant Officers attending training programs related to use of force prior to the incident with Plaintiffs.

78. On information and belief, Defendant Officers attending training programs related to investigation of crimes and lawful search and seizure prior to the incident with Plaintiffs.

79. Despite receiving training designed to prevent the conduct described in this Complaint, Defendant Officers violated Plaintiffs' constitutional rights as described in the Complaint.

80. Prior to the incident, CITY knew prior to the incident, its training program was insufficient to prevent the type of conduct experience by Plaintiffs but did nothing to prevent the conduct.

81. The Chief of Police of Los Angeles is the final decision maker to determine if



1  employee's actions were within policy and procedure and will determine whether

2  any additional actions, investigations or reviews are appropriate.

3  82. On information and belief, the Chief of Police reviewed the conduct described

4  in the Complaint and either initiated a review of the conduct of Defendant Officers

5  or declined the review of the conduct.

6  83. The aforesaid policies, customs, practices and usages described in this

7  Complaint were the moving force that caused Plaintiffs to be subjected to

8  unconstitutional policing by Defendant Officers on June 3, 2020.

9  84. By reason of the aforesaid policies, customs, practices and usages, Plaintiffs'

10  Fourth and Fourteenth Amendments to the United States Constitution were violated.

11  ### FIFTH CAUSE OF ACTION

12  ### Negligence – Cal. Govt. Code §§ 815.2(a), 820(a)

13  ### (Plaintiffs against All Defendants)

14  85. Plaintiffs incorporate by reference each and every allegation and fact

15  contained in the preceding paragraphs of this complaint as though fully set forth

16  herein.

17  86. Plaintiffs are informed and believe and there upon allege that Defendant

18  Officers, and each of them, failed to exercise reasonable and ordinary care in

19  committing the acts alleged herein, by actions and inactions which include, but are

20  not limited to, negligently pointing their firearms at Plaintiffs without any legal

21  justification for doing so, negligently stopping and arresting Plaintiffs without

22  probable cause or reasonable suspicion to believe that Plaintiffs had or were

23  committing a crime, and negligently searching Plaintiffs' persons and Navodney's

24  vehicle without consent, probable cause or reasonable suspicion to believe that

25  Plaintiffs had committed or were committing a crime. These negligent acts

26  proximately caused severe injuries to Plaintiffs, as described herein.

27  87. As a result of these acts, Plaintiffs feared for their lives and physical

28  wellbeing. Moreover, due to the negligent acts of each of the Defendant Officers,



Plaintiffs have suffered and will continue to suffer serious emotional pain and severe mental anguish.

88.  As a result of the conduct of Defendant Officers, individually and as peace officers, they are liable for Plaintiffs' injuries, either because they were integral participants in the negligent acts, or because they failed to intervene to prevent these violations.

89.  The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers, individually.

**SIXTH CAUSE OF ACTION**

**Assault**

**(Plaintiffs against All Defendants)**

90.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

91.   Defendant Officers, individually and as a peace officers, while working as police officers for the CITY, and acting within the course and scope of their duties, committed assault on Plaintiffs when:

    a.  Defendant Officers pointed their firearms at Plaintiffs while giving Plaintiffs orders, without any legal justification;

    b.  Defendant Officers searched Plaintiffs without reasonable suspicion; and

    c.  Defendant Officers restrained Plaintiffs in handcuffs, without reasonable suspicion or probable cause to believe that any of the Plaintiffs had committed any crime or were going to commit any crime.

92.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.



93.   As a direct and proximate cause of the civil rights violations by Defendant Officers, individually and as a peace officers, Plaintiffs suffered mental anguish and emotional distress, for which he is entitled to recover damages.

94.   The conduct of Defendants, individually and as peace officers, was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiffs' entitling Plaintiffs to an award of exemplary and punitive damages.

**SEVENTH CAUSE OF ACTION**

**Battery**

**(Plaintiffs against All Defendants)**

95.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

96.   Defendant Officers, individually and as a peace officers, while working as police officers for the CITY, and acting within the course and scope of their duties, committed battery on Plaintiffs when:

   a.  Defendant Officers pointed their firearms at Plaintiffs while giving Plaintiffs orders, without any legal justification;

   b.  Defendant Officers searched Plaintiffs without reasonable suspicion; and

   c.  Defendant Officers restrained Plaintiffs in handcuffs, without reasonable suspicion or probable cause to believe that any of the Plaintiffs had committed any crime or were going to commit any crime.

97.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

98.   As a direct and proximate cause of the civil rights violations by Defendant Officers, individually and as a peace officers, Plaintiffs suffered mental anguish and emotional distress, for which he is entitled to recover damages.

99.   The conduct of Defendants, individually and as peace officers, was malicious,



1  wanton, oppressive, and accomplished with a conscious disregard for Plaintiffs'

2  entitling Plaintiffs to an award of exemplary and punitive damages.

3  ## EIGHTH CAUSE OF ACTION

4  ### Intentional Infliction of Emotional Distress

5  ### (Plaintiffs against All Defendants)

6  100.  Plaintiffs incorporate by reference each and every allegation contained in the

7  foregoing paragraphs, as well as any subsequent paragraphs contained in the

8  Complaint, as if fully set forth herein.

9  101.  The aforementioned unlawful searches and seizures suffered by Plaintiffs

10  constituted extreme and outrageous conduct. Defendants, while working as police

11  officers for CITY and acting within the course and scope of their duties, knew or

12  should have known their extreme and outrageous conduct would cause Plaintiffs

13  severe emotional distress.

14  102.  Defendants, while working as police officers for CITY and acting within the

15  course and scope of their duties, unlawfully searched and seized Plaintiffs, despite

16  knowing that none of Plaintiffs match any suspect description for the crime

17  Defendant Officers were purportedly investigating.

18  103.  Defendant, while working as police officers for CITY and acting within the

19  course and scope of their duties, unlawfully searched Navodney's vehicle, without

20  consent, reasonable suspicion or probable cause to do so.

21  104.  In doing the aforementioned acts, Defendants' conduct was intentional,

22  outrageous, malicious, and done for the specific purpose of causing Plaintiffs to

23  suffer extreme emotional and physical distress, fear, anxiety, and mental anguish.

24  105.  As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either

25  because they were integral participants in the misconduct, or because they failed to

26  intervene to prevent these violations.

27  106.  As a direct and proximate cause of the aforementioned Defendants' acts and

28  omissions, Plaintiffs were injured as set forth above.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NINTH CAUSE OF ACTION**

**Violation of the Bane Act – Cal. Civil Code §§ 52 and 52.1**

**(Plaintiffs against All Defendants)**

107. Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

108. As alleged herein, Defendants Officers intentionally interfered with Plaintiffs' rights under state and federal laws and under the state and federal constitution including, without limitation, the right to be free from unreasonable search and seizure, the right to due process, and the right to bodily integrity, including their rights under the Fourth and Fourteenth Amendments to the United States Constitution, and rights under Article 1, Sections 1, 7 and/or 13 of the California Constitution, by way of threats, intimidation and coercion.

109. As a direct and proximate cause of Defendants' actions and inactions, individually and as a peace officers, Plaintiffs have suffered and will continue to suffer severe mental anguish and emotional distress.

110. The conduct of Defendants, individually and as peace officers, was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiffs' rights entitling Plaintiffs to an award of exemplary and punitive damages. Plaintiffs do not seek punitive damages against the CITY.

111. Plaintiffs seek statutory damages under California Civil Code §52, as well as compensatory and punitive damages according to proof.

**TENTH CAUSE OF ACTION**

**Violation of the Ralph Act – Cal. Civil Code §§ 51.7**

**(Plaintiffs against All Defendants)**

112. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the



-24-
COMPLAINT

Complaint, as if fully set forth herein.

113. As set forth in the California Civil Code § 51.7(a), all persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property on account of his or her race.

114. Defendant Officers, and each of them, interfered with the exercise and enjoyment of DECEDENT's rights secured to him by the Constitution or laws of this State, in violation of Civil Code §51.7, by using excessive force on Plaintiffs.

115. Upon information and belief, Defendant Officers' conduct during the detention was done so with improper discriminatory motive and intent, and with reckless and callous indifference to Plaintiffs' rights.

116. Plaintiffs further allege that Defendant Officers would not have used such excessive force on Plaintiffs had he not been an African-American male.

117. As a direct and proximate cause of the aforementioned Defendant Officers' acts, Plaintiffs were injured, suffered damages, including, without limitation, loss of earnings and earning capacity, pain and suffering, physical injuries and sickness, emotional distress, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

118. As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

119. CITY is vicariously liable for the wrongful acts of Defendant Officers, individually and as peace officers, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries causes by its employees within the scope of the employment if the employee's act would subject him or her to liability.

120. The conduct of Defendant Officers, individually and as peace officers, was



malicious, wanton, oppressive, and accomplished with a conscious disregard for the Plaintiffs' rights, entitling Plaintiffs to an award of exemplary and punitive damages against each individual Defendant.

121. Plaintiffs seek statutory damages under California Civil Code §52, as well as compensatory and punitive damages according to proof.

<strong>PRAYER</strong>

WHEREFORE, PLAINTIFFS request entry of judgment in their favor and against Defendants as follows:

1.      For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2.      For special damages according to proof;

3.      For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4.      For prejudgment interest;

5.      For attorneys' fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);

6.      For reasonable costs of this suit incurred herein; and

7.      For such other and further relief as the Court may deem just, proper and appropriate.

Dated: February 5, 2021                                **PLC LAW GROUP, APC**


                                                       */s/Peter L. Carr, IV*
                                                       _____
                                                       Peter L. Carr, IV
                                                       Na'Shaun L. Neal
                                                       Lauren K. McRae
                                                       Attorneys for Plaintiffs Navodney
                                                       Lewis, Walter Hardin, Ke'mani
                                                       Jacques and Kenneth Jacques



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby respectfully demand a trial by jury on all issues and claims.

Dated: February 5, 2021                        **PLC LAW GROUP, APC**


*/s/Peter L. Carr, IV*
_____
Peter L. Carr, IV
Na'Shaun L. Neal
Lauren K. McRae
Attorneys for Plaintiffs Navodney
Lewis, Walter Hardin, Ke'mani
Jacques and Kenneth Jacques

